1    Jonathan K. Levine (State Bar No. 220289)
     jkl@girardgibbs.com
2    Aaron M. Sheanin (State Bar No. 214472)
     ams@girardgibbs.com
3    Bernard J. Kornberg (State Bar No. 252006)
     bjk@girardgibbs.com
4    **GIRARD GIBBS LLP**
     601 California Street, Suite 1400
5    San Francisco, CA 94108
     Telephone:  (415) 981-4800
6    Facsimile:  (415) 981-4846

7    Counsel for Individual and Representative
     Plaintiff James Furman

8

9

10                  **UNITED STATES DISTRICT COURT**

11            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12   JAMES FURMAN, Individually And On Behalf  )  **CIVIL ACTION NO.** _____
     of All Others Similarly Situated,          )
13                                               )
                                                 )  **CLASS ACTION COMPLAINT**
14                                               )  **FOR VIOLATIONS OF**
                       Plaintiff,                )  **FEDERAL SECURITIES LAWS**
15                                               )
     v.                                          )
16                                               )  **JURY TRIAL DEMANDED**
     SiRF TECHNOLOGY HOLDINGS, INC.,             )
17   MICHAEL L. CANNING, DIOSDADO P.             )
     BANATAO, KANWAR CHADHA, and                 )
18   GEOFFREY RIBAR,                             )
                                                 )
19                     Defendants.               )
     _____)

20                         **INTRODUCTION**

21        1.      This is a federal class action on behalf of purchasers of the securities of SiRF Technology

22   Holdings, Inc. ("SiRF" or the "Company") between October 30, 2007 and February 4, 2008, inclusive

23   (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the

24   "Exchange Act").

25        2.      As alleged herein, in connection with the sale of securities, defendants published a series

26   of materially false and misleading statements which defendants knew and/or deliberately disregarded

27   were false and materially misleading at the time of such publication, and/or omitted to reveal material

28

                                    - 1 -

information necessary to make defendants' statements, in light of such material omissions, not materially false and misleading at that time.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act. The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC").

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), §1337. Defendant SiRF maintains its principal place of business within this District, and/or the individual defendants conduct business in and many of the acts giving rise to the violations complained of herein took place in this District.

5.      In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff James Furman, as set forth in the accompanying certification, incorporated by reference herein, purchased SiRF common stock at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant SiRF is a Delaware corporation with its principal place of business located 148 East Brokaw Road, San Jose, CA 95112. SiRF describes itself as "a leading supplier of GPS semiconductor and software solutions designed to provide location awareness capabilities in high-volume mobile consumer and commercial systems."

8.      Defendant Michael L. Canning ("Canning") was, during the Class Period, Chairman and Chief Executive Officer of the Company. During the Class Period, defendant Canning signed the Company's SEC filings.

9.      Defendant Diosdado P. Banatao ("Banatao") was, during the Class Period, Chairman of the Board of SiRF. Banatao also was a co-founder of the Company. During the Class Period, Banatao sold 400,000 shares of his SiRF stock for proceeds of $9.6 million.

- 2 -

10.    Defendant Geoffrey Ribar ("Ribar") was, during the Class Period, Chief Financial Officer ("CFO") and Senior Vice President of Vinance of SiRF.  During the Class Period, defendant Canning signed the Company's SEC filings.

11.    Defendant Kanwar Chadha ("Chadha") was, during the Class Period, Vice President of Marketing and a director of the Company.  Chadha was also a co-founder of the company.

12.    Canning, Banatao, Ribar, and Chadha are referred to herein as the "Individual Defendants."

13.    Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets and business prospects *via* access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

14.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above.  Each of the above officers of SiRF, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels, and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein.  The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or deliberately disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

15.    As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ,

and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

16.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or deliberately and/or negligently disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with SiRF, each of the Individual Defendants had access to the adverse undisclosed information about SiRF's business prospects and financial condition and performance as particularized herein and knew (or deliberately and/or negligently disregarded) that these adverse facts rendered the positive representations made by or about SiRF and its business issued or adopted by the Company materially false and misleading.

17.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein, and is therefore primarily liable for the representations contained therein.

18.    Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of SiRF common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i)

- 4 -

deceived the investing public regarding SiRF's business, operations, management and the intrinsic value of SiRF common stock; (ii) enabled the defendants to sell over $9.6 million worth of Company stock to investors during the Class Period; and (iii) caused plaintiff and other members of the Class to purchase SiRF securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

19.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased or otherwise acquired the securities of SiRF between October 30, 2007 and February 4, 2008, inclusive (the "Class") and who were damaged thereby.  Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

20.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, SiRF common shares were actively traded on the NASDAQ.  As of February 20, 2008, the Company had over 60 million shares issued and outstanding. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by SiRF or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

21.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and financial results of SiRF; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

22.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

23.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

24.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## BACKGROUND

25.     SiRF Technology Holdings, Inc. supplies global positioning system (GPS) semiconductor solutions. The Company's solutions are designed to provide location awareness capabilities in high-volume mobile consumer and commercial systems. SiRF markets and sells it products to original equipment manufacturers of wireless handheld devices, portable computing devices, and other products.

26.     On August 6, 2007, the Company acquired Centrality, another supplier of GPS semiconductor solutions, for 2.1 million shares of SiRF stock.

## SUBSTANTIVE ALLEGATIONS

### Defendants' Materially False and Misleading
### Statements Made During the Class Period

27.     On October 30, 2007, the inception of the Class Period, the Company issued a press release entitled "SiRF Technology Holdings Inc. Announces Financial Results for Third Quarter 2007," which stated in part:

SiRF reports record revenue and strong Non-GAAP operating profits

... SiRF Technology Holdings, Inc., a leading provider of GPS-enabled silicon and premium software location platforms, today reported unaudited financial results for its third quarter ended September 30, 2007.

Net revenue in the third quarter of 2007 was $91.2 million, an increase of 43 percent from $63.7 million reported in the third quarter of 2006.  Net revenue in the first nine months of 2007 was $229.0 million, an increase of 32 percent

- 6 -

from $173.5 million reported in the first nine months of 2006.  Gross margin in the third quarter of 2007 was 52.2 percent, as compared to 55.6 percent in the third quarter of 2006. Gross margin in the first nine months of 2007 was 53.7 percent, as compared to 55.7 percent in the first nine months of 2006.

Net loss for the third quarter of 2007 was $16.1 million, or $(0.28) per diluted share, based on 57.0 million diluted weighted average shares outstanding. This compares with net income of $2.6 million, or $0.05 per diluted share, based on 55.6 million diluted weighted average shares outstanding in the third quarter of 2006.

Net loss for the first nine months of 2007 was $11.1 million, or $(0.21) per diluted share, based on 54.0 million diluted weighted average shares outstanding. This compares with net loss of $6.7 million, or $(0.13) per diluted share, based on 50.9 million diluted weighted average shares outstanding in the first nine months of 2006.

*          *          *

"We believe our Q3 performance has been exceptional. We have once again posted record revenues on record shipment volumes with excellent profitability and strong bookings momentum. Our acquisition of Centrality and broadening of our product portfolio with the System-on-Chip (SoC) products has been enthusiastically welcomed by customers, and the SoC products are also breaking revenue and shipment volume records," said Dr. Michael Canning, President and CEO.

The assets acquired and liabilities assumed as part of the acquisition of Centrality in August 2007 are reflected in SiRF's consolidated financial statements. As SiRF finalizes certain valuation assumptions, adjustments may be recorded in the related purchase price allocations.

Q3'2007 Highlights and Business Outlook:

- We have successfully closed the merger with Centrality Communications and are integrating our products, platforms and personnel. The resulting combination has exceeded our expectations and has been very well received by customers, vendors and employees alike. We are seeing significant design win momentum at major PND customers for our SoC platforms. We are now working on synergistic extensions of our combined fundamental technology.

- Growth in our Automotive business, and particularly in Portable Navigation Devices (PNDs), continues to be very strong and to mirror overall market growth. In Q3, we made record volume shipments to a number of major customers. In addition, many of our customers, including ASUS, Garmin, HP, Magellan, Mio, Siemens VDO and TomTom, launched new platforms using SiRfstarIII or SiRF SoC based products this quarter.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

- Interest in and demand for our products continues to accelerate in our Wireless business. One of our key tier one customers launched their first new GPS enabled handset which has been qualified at two operators this quarter; and RIMM continues to launch new GPS-enabled products and expand the number of operators using their platform. Multiple handsets based on the SiRFstarIII platforms have also been announced or moved into volume production by customers such as Mio ASUS and Amoi, one of the leading local handset manufacturer in China. In July, Chung-Hwa Telecom launched LBS services based on a SiRF SUPL 1.0 AGPS server and our SiRFstudio development platform for LBS applications is getting good reception at some of the leading operators.

- In the consumer and mobile computing market, SiRFstarIII architecture is gaining more momentum. Garmin launched a new generation of their SiRFstarIIII based Edge platforms for cyclists and Magellan launched a new family of SiRFstarIII based TRITON™ handhelds featuring National Geographic's award winning full color topographic maps. One of the leading mobile gaming customers launched a GPS accessory with gaming and navigation software for their mobile gaming platform and we are also starting to see increasing interest from digital camera industry.

28.    During a conference call following the release of SiRF's Q3 2007 results, defendants stated the following:

[CANNING]:  Customer interest in our Atlas-Titan SoC platforms has been very strong, especially in the Tier-1 PND market, and we expect them to be significant contributors to our revenue growth in 2008 and beyond, **as these and other design wins move into high volume production**.

\*        \*        \*

Interest in and demand for our products continues to accelerate in our wireless business. One of our key Tier-1 customers has launched their first new GPS-enabled handset, which has been qualified with two operators. And one of our leading wireless customers, Research In Motion, continues to launch new GPS-enabled products and expand the number of operators supporting their platform. Multiple handsets based on SiRFstarIII platforms have also been announced or moved into volume production by customers such as Neo, MyTech, Asus and Amoi, one of the leading local handset manufacturers in China. **In addition, our diverse customer base continues to introduce novel products based on our award-winning GPS technology**. Of particular note this quarter, many of the Tier-1 handset manufacturers have launched GPS-Bluetooth accessory modules based on SiRFstarIII and compatible with a variety of existing handsets, which can provide GPS navigation, mapping and other traffic data to the appropriate Bluetooth-enabled phones.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

Our end-to-end location platform continues to gain momentum. For example, LBS services based on a SiRF Secure User Plane 1.0, a GPS server were launched by Chung-Hwa Telecom in July, and our SiRF studio development platform for LBS applications is getting good reception at some of the leading operators worldwide. In our consumer market segment, Garmin launched a new generation of their SiRFstarIII based EDGE platforms for cyclists and Magellan launched a new family of SiRFstarIII-based Triton handhelds, featuring National Geographic's award winning full color topographic maps. We are also experiencing good growth and substantial sustained interest from Asian consumer electronics and computing companies in some of the more novel applications of GPS into media players, cameras and gaming systems. Already a leading manufacturer has introduced a SiRFstarIII based GPS accessory to a portable gaming system, which is expected to be deployed globally at an attractive price point early in 2008.

With our newly extended product portfolio and a major new operational base in China, **we believe there will be substantial growth in this market segment in the next year or so, as the use of GPS based location technology becomes a standard feature in consumer electronics.** And we believe that we are extremely well positioned to enjoy that growth. Earlier this quarter we signed a major agreement with Intel to jointly develop a series of innovative products designed to bring our GPS technology to mainstream mobile computing platforms, and we continue to receive positive feedback from our customers on this.

\*        \*        \*

**Demand for our products is robust across all market segments.** And we expect to see Q4 revenues in the range 99 to 102 million with at least 10% of this revenue coming from SoC products. This will bring revenue for the year into the range 328 to 331 million. Assuming a tax rate of 5 to 10%, we are modeling EPS for Q4 in the range $0.31 to $0.33.

\*        \*        \*

<ANALYST JEROEN BOS>: So let's say a full quarter of Centrality in Q4, will that then depress margin or with the higher revenue level, do you expect gross margin to go up sequentially a little bit?

< RIBAR>: **We expect to maintain our gross margins.** We have done for the last 5 years, and we expect to continue.

<CANNING>: **In the 54 to 55% range.**

\*        \*        \*

<CHADHA>: Okay, so on the wireless side, we do expect more handsets from Tier-1 customers in '08. We expect '08 to be quite a strong year for wireless

- 9 -

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

based on all the feedback we are getting from handset partners as well as an operator. We just held a location 2.0 Summit where we brought together key leaders in the handset industry as well as global operators and all the feedback during the summit as well as in our private conversation as that 2008 will be a strong year with multiple handset from Tier-1 customers. On the second question, we do not comment on any individual customers revenue targets.

\*      \*      \*

<CHADHA> We are seeing significant adoptions outside of the traditional developed world model. I think just like what you have seen in the wireless space, China and India and some of the South America companies are becoming growth drivers. We are starting to see similar opportunities in these markets. And we believe that in 2008, they will start becoming increasing part of our end markets and clearly in 2009 we'll provide significant higher growth.

\*      \*      \*

<CANNING> All the things that we expected to happen are happening. In fact, on some fronts, they're happening faster than we would have thought. But on others, there have been a little more slow to happen. There's also a fair amount of complication that goes with deploying anything in the wireless market, and that's why it takes a certain amount of expertise working with customers to make everything work out. But we've been very happy at the progress that has occurred in the last several quarters, and we believe that this ramp is going to happen just as we expected but perhaps not in exactly the same timeframe that we expected a year ago.

\*      \*      \*

<ANALYST PETER FRIEDLAND>: Well, then as a follow-up. Do you feel like you've really taken a big brunt of the ASP decline in Q3 so we'll see more modest declines going forward or will we see more of the same?

<CANNING>: Well, there's always competition in the marketplace, and that's something we have expected and forecast for some time. So it's not surprising that competitors are there. It's not surprising that if they want to try to win business from us, they try to offer lower prices. But we plan to be just as competitive going forward as we have been in the past. And we expect to win more sockets than we lose and to improve the value of the sockets that we win.

<RIBAR>: So I think the other point is clearly, right, we've been able to sustain our market share, sustain our margin, sustain our business model in this pricing environment. So I think we've done an outstanding job over an extended period of time of maintaining our business.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

&lt;CHADHA&gt;: And I think in 2008 as we launch new, more value-added product, as we bring more of our customers onto the SoC platforms, we will have more ability to add value and reverse some of these traditional price declines.

29.    On this news, SiRF's share price increased by $6.51, to close on October 31, 2007 at $29.81 per share on volume of 11.9 million shares.

30.    Between November 29, 2007 and November 30, 2007, defendant Banatao sold 400,000 shares of his SiRF stock, reaping $9,694,000 in proceeds.

31.    In January 2008, SiRF's share price declined as investors began to doubt the market for SiRF's products. Defendants did not reveal how much of SiRF's growth was disappearing, however, and the stock continued to be artificially inflated.

## THE TRUE FINANCIAL AND OPERATIONAL CONDITION OF SIRF IS DISCLOSED

32.    SiRF's stock closed at $16.27 per share on February 4, 2008. After the market closed that day, the Company issued a press release entitled "SiRF Technology Holdings, Inc. Announces Financial Results for Fourth Quarter and Fiscal 2007," that announced a significant decrease in fourth quarter profits. The press release stated in part:

SiRF Technology Holdings, Inc. (NASDAQ: SIRF), a leading provider of GPS-enabled silicon and premium software location platforms, today reported unaudited financial results for its fourth quarter and year-ended December 31, 2007.

Net revenue in the fourth quarter of 2007 was $100.4 million, an increase of 35.3 percent from $74.2 million reported in the fourth quarter of 2006. Net revenue in fiscal 2007 was $329.4 million, an increase of 33.0 percent from $247.7 million reported in fiscal 2006. Gross margin in the fourth quarter of 2007 was 48.1 percent, as compared to 54.7 percent in the fourth quarter of 2006. Gross margin in fiscal 2007 was 50.9 percent, as compared to 54.8 percent in fiscal 2006.

Net income for the fourth quarter of 2007 was $0.7 million, or $0.01 per diluted share, based on 64.3 million diluted weighted average shares outstanding. This compares with net income of $9.1 million, or $0.16 per diluted share, based on 56.1 million diluted weighted average shares outstanding in the fourth quarter of 2006.

Net loss for fiscal 2007 was $(10.4) million, or $(0.19) per diluted share, based on 55.5 million diluted weighted average shares outstanding. This

- 11 -

compares with net income of $2.4 million, or $0.04 per diluted share, based on 56.0 million diluted weighted average shares outstanding in fiscal 2006.

*      *      *

Total cash, cash equivalents and short-term investments were $139.4 million at December 31, 2007, compared with $170.2 million at December 31, 2006. The Company had no long term investments at December 31, 2007, compared with $26.4 million at December 31, 2006. During the third quarter of 2007, SiRF acquired Centrality which led to the decrease in cash, cash equivalents and investments.

"This was a good Quarter for SiRF fueled by strong seasonal demand for GPS location-enabled consumer products, and we reported record growth in revenue and units. **However, our gross margin performance was negatively impacted by a combination of competitive market pricing and a shift of product mix,**" said Dr. Michael Canning, President and CEO.

The assets acquired and liabilities assumed as part of the acquisition of Centrality in August 2007 are reflected in SiRF's consolidated financial statements. The results of Centrality's operations have been included in SiRF's consolidated results of operations since the August 6, 2007 acquisition close date. As SiRF finalizes certain valuation assumptions, adjustments may be recorded in the related purchase price allocations.

33.    On the conference call following the earnings release, Canning admitted that defendants had expected gross margins to decline and that market demand for SiRF's products had been overstated:

We had always expected that gross margins would start to shift down as ramping of certain products occurred and as competitive influences came into the market. So for the moment, I think, it's probably best to assume that we'll be around 50% gross margin.

*      *      *

<ANALYST DAVID WU>: Yes. I was curious about two things. The first thing is, given the fact that the SoC business sounds like it's going to drop more in the first quarter of '08 versus the fourth – versus the rest of the company, the gross margin on the other hand, is down sequentially from the fourth-quarter level. What – why is that the case? Particularly you sounded like the wireless was going to get better in Q1 than in Q4?...

<CANNING>: In both cases it was a reduction in those customers' demand, market demand.

34.    On February 5, 2008, SiRF's stock collapsed $8.91 per share to close at $7.36 per share, a one-day decline of 54% on volume of 63 million shares, 30 times the average three-month volume.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

35.    Forbes.com, in a February 5, 2008, article entitled "SiRF Shares Wiped Out," discussed SiRF's competitive issues:

Shares of SiRF Technologies drowned on Tuesday.

The firm closed trading down 54.8%, or $8.91, to $7.36 after announcing fourth-quarter earnings below analyst estimates.

SiRF Technologies, makes parts for GPS devices. The firm saw its shares fall after it reported an 89% decrease in fourth-quarter profits to $0.7 million from $9.1 million the year before. The company also gave a miserable outlook for the first-quarter, predicting a loss of 4 cents per share on revenue of $71 million to $77 million. Analysts polled by Thomson Financial expected, on average, profit of 24 cents per share on revenue of $92.4 million.

SiRF is the leading supplier of global positioning system chips, supplying industry-leading brands like TomTom and Garmin. Despite demand for the GPS units, pricing has gone down significantly over the last year putting strain on SiRF to lower prices as well.

"The guidance was the big bugaboo," said Jefferies analyst Adam Benjamin. "We've been concerned about Portable Navigation Devices pricing pressure, but thought the wireless would offset that. Handsets are a billion-unit market; as that takes off that could dwarf the PND market."

Benjamin downgraded the stock to "hold" from "buy" and lowered his price target to $9 from $32.

"I think over time you will see GPS in all handsets," added Benjamin, "but the question is 'who is going to benefit from that?'"

SiRF purchased Centrality Communications, another GPS chip-maker, June of last year, giving it the potential to be a bigger player in the wireless market. Mobile phone currently incorporate GPS technology, but it is not widely used. The industry is making a shift over to 3G, or W-CDMA standards, opening up the market for next-gen mobile devices.

36.    Defendants knew but concealed the following facts from the investing public during the Class Period:

(a) SiRF's acquisition of Centrality had an adverse impact on SiRF's results, as Centrality's products undermined the sales of SiRF's own products;

(b) SiRF's major customers did not place orders at sufficient quantities for SiRF to meet the Company's aggressive targets;

(c) Centrality's SoC product line had lower gross margins than SiRF's products which would reduce SiRF's gross margins, causing SiRF's EPS and gross margin guidance for the fourth quarter of 2007 to be false;

- 13 -

(d) Competitive pressures had a greater adverse impact on the Company than acknowledged by defendants, as SiRF's customers moved to cellular-enabled products which SiRF could not adequately compete with; and

(e) Downward pricing pressures had accelerated and were leading to lower margins and earnings in future quarters.

37.    As a result of defendants' false and misleading statements, SiRF's stock traded at inflated levels during the Class Period.  Upon defendants' release of SiRF's fourth quarter earnings, however, the Company's share price collapsed, falling more than 75 percent from its Class Period high.

## ADDITIONAL SCIENTER ALLEGATIONS

38.    As alleged herein, defendants acted with scienter in that each defendant knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding SiRF, their control over, and/or receipt and/or modification of SiRF's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning SiRF, participated in the fraudulent scheme alleged herein.

39.    In addition, throughout the Class Period, while in possession of material adverse non-public information, defendant Banatao was motivated to materially misrepresent to the SEC and investors the true financial condition of the Company in order to raise *over $9.6 million* in total proceeds from the sales of SiRF's securities.

//

//

//

//

//

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

40.     Defendant Banatao's insider sales are set forth below:

### Diosdado P. Banatao

| Transaction Date | Shares Sold | Share Price | Proceeds |
|---|---|---|---|
| 11/29/2007 | 50,000 | 24.29 | 1,214,505.00 |
| 11/29/2007 | 150,000 | 24.29 | 3,643,515.00 |
| 11/30/2007 | 69,638 | 24.18 | 1,683,693.60 |
| 11/30/2007 | 130,362 | 24.18 | 3,151,866.40 |
| TOTAL SHARES SOLD | 400,000 | TOTAL PROCEEDS | 9,693,580.00 |

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

41.     At all relevant times, the market for SiRF's securities was an efficient market for the following reasons, among others:

        (a)     SiRF's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

        (b)     As a regulated issuer, SiRF filed periodic public reports with the SEC and the NASDAQ;

        (c)     SiRF regularly communicated with public investors *via* established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

        (d)     SiRF was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

42.     As a result of the foregoing, the market for SiRF securities promptly digested current information regarding SiRF from all publicly available sources and reflected such information in SiRF stock price. Under these circumstances, all purchasers of SiRF securities during the Class Period

- 15 -

suffered similar injury through their purchase of SiRF securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

43.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of SiRF who knew that those statements were false when made.

## LOSS CAUSATION/ECONOMIC LOSS

44.     During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of SiRF securities and operated as a fraud or deceit on purchasers of SiRF securities by misrepresenting the Company's operating condition, financial results and business prospects. Defendants achieved this by making positive statements about SiRF's business while they knew that the Company was suffering from a variety of adverse factors which were then negatively impacting its financial results, as detailed herein. Later, however, when SiRF' prior misrepresentations were disclosed and became apparent to the market, the price of SiRF securities fell precipitously as the prior artificial inflation came out of SiRF's share price. As a result of their purchases of SiRF publicly traded securities during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under the federal securities laws.

45.     The decline in SiRF's share price at the end of the Class Period was a direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market. The timing and magnitude of SiRF's share price declines negate any inference that the loss suffered by plaintiff and

- 16 -

1   other Class members was caused by changed market conditions, macroeconomic or industry factors, or

2   Company-specific facts unrelated to defendants' fraudulent conduct.

3                               **BASIS OF ALLEGATIONS**

4           46.     Plaintiff has alleged the following based upon the investigation of plaintiff's counsel,

5   which included a review of SEC filings by SiRF, as well as regulatory filings and reports, securities

6   analysts' reports and advisories about the Company, press releases and other public statements issued by

7   the Company, and media reports about the Company, and plaintiff believes that substantial additional

8   evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for

9   discovery.

10                                  **FIRST CLAIM**

11                          **Violation Of Section 10(b) Of**
                            **The Exchange Act And Rule 10b-5**
12                  **Promulgated Thereunder Against All Defendants**

13          47.     Plaintiff repeats and realleges each and every allegation contained above as if fully set

14  forth herein.

15          48.     During the Class Period, defendants carried out a plan, scheme and course of conduct

16  which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including

17  plaintiff and other Class members, as alleged herein; (ii) enable the Individual Defendants to sell more

18  than $9 million of their personally-held SiRF common stock to the unsuspecting public; and (iii) cause

19  plaintiff and other members of the Class to purchase SiRF securities at artificially inflated prices.  In

20  furtherance of this unlawful scheme, plan and course of conduct, defendants, jointly and individually

21  (and each of them) took the actions set forth herein.

22          49.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue

23  statements of material fact and/or omitted to state material facts necessary to make the statements not

24  misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and

25  deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market

26  prices for SiRF's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All

27  defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or

28  as controlling persons as alleged below.

1      50.     Defendants, individually and in concert, directly and indirectly, by the use, means or

2    instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous

3    course of conduct to conceal adverse material information about the business, operations and prospects

4    of SiRF as specified herein.

5      51.     These defendants employed devices, schemes and artifices to defraud, while in

6    possession of material adverse non-public information, and engaged in acts, practices, and a course of

7    conduct as alleged herein in an effort to assure investors of SiRF's value and performance and continued

8    substantial growth, which included the making of, or the participation in the making of, untrue

9    statements of material facts and omitting to state material facts necessary in order to make the statements

10   made about SiRF and its business operations and prospects in the light of the circumstances under which

11   they were made, not misleading, as set forth more particularly herein, and engaged in transactions,

12   practices and a course of business which operated as a fraud and deceit upon the purchasers of SiRF

13   securities during the Class Period.

14     52.     Each of the Individual Defendants' primary liability, and controlling person liability,

15   arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors

16   at the Company during the Class Period and members of the Company's management team or had

17   control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior

18   officer and/or director of the Company, was privy to and participated in the creation, development and

19   reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these

20   defendants enjoyed significant personal contact and familiarity with the other defendants and was

21   advised of and had access to other members of the Company's management team, internal reports and

22   other data and information about the Company's finances, operations, and sales at all relevant times; and

23   (iv) each of these defendants was aware of the Company's dissemination of information to the investing

24   public which they knew or deliberately disregarded was materially false and misleading.

25     53.     The defendants had actual knowledge of the misrepresentations and omissions of material

26   facts set forth herein, or acted with deliberate disregard for the truth in that they failed to ascertain and to

27   disclose such facts. Such defendants' material misrepresentations and/or omissions were done

28   knowingly or deliberately and for the purpose and effect of concealing SiRF's operating condition and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

1    business prospects from the investing public and supporting the artificially inflated price of its securities.

2    As demonstrated by defendants' overstatements and misstatements of the Company's business,

3    operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge

4    of the misrepresentations and omissions alleged, were deliberate in failing to obtain such knowledge by

5    deliberately refraining from taking those steps necessary to discover whether those statements were false

6    or misleading.

7        54.    As a result of the dissemination of the materially false and misleading information and

8    failure to disclose material facts, as set forth above, the market price of SiRF securities was artificially

9    inflated during the Class Period.  In ignorance of the fact that market prices of SiRF's publicly-traded

10   securities were artificially inflated, and relying directly or indirectly on the false and misleading

11   statements made by defendants, or upon the integrity of the market in which the securities trade, and/or

12   on the absence of material adverse information that was known to or deliberately disregarded by

13   defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the

14   other members of the Class acquired SiRF securities during the Class Period at artificially high prices

15   and were damaged thereby.

16       55.    At the time of said misrepresentations and omissions, plaintiff and other members of the

17   Class were ignorant of their falsity, and believed them to be true.  Had plaintiff and the other members

18   of the Class and the marketplace known the truth regarding the problems that SiRF was experiencing,

19   which were not disclosed by defendants, plaintiff and other members of the Class would not have

20   purchased or otherwise acquired their SiRF securities, or, if they had acquired such securities during the

21   Class Period, they would not have done so at the artificially inflated prices which they paid.

22       56.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act,

23   and Rule 10b-5 promulgated thereunder.

24       57.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other

25   members of the Class suffered damages in connection with their respective purchases and sales of the

26   Company's securities during the Class Period.

27

28

## SECOND CLAIM

### Violation Of Section 20(a) Of
### The Exchange Act Against Individual Defendants

58.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.     The Individual Defendants acted as controlling persons of SiRF within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

61.     As set forth above, SiRF and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder; and

E.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: February 25, 2008                    Respectfully submitted,

GIRARD GIBBS LLP

By: _____
       Aaron M. Sheanin

Jonathan K. Levine
Bernard J. Kornberg
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone:  (415) 981-4800
Facsimile:  (415) 981-4846

Counsel for Individual and Representative
Plaintiff James Furman

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF
## PURSUANT TO THE FEDERAL SECURITIES LAWS

I, James Furman, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.     I have reviewed the complaint against SiRF Technology Holdings, Inc. and its officers, prepared by Girard Gibbs LLP, whom I designate as my counsel in this action for all purposes.

2.     I did not acquire the securities of SiRF Technology Holdings, Inc. at the direction of Girard Gibbs LLP or in order to participate in any private action under the federal securities laws.

3.     I am willing to serve as a lead plaintiff either individually or as part of a group. I understand that a lead plaintiff is a representative party who acts on behalf of other class members in directing the litigation, and whose duties may include testifying at deposition or trial.

4.     I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the Court pursuant to law.

5.     I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years.

6.     I understand that this is not a claim form, and that my ability to share in any recovery as a class member is not affected by my decision to serve as a representative party.

7.      My purchases and sales of SiRF Technology Holdings, Inc. securities between October 30, 2007 and February 4, 2008 are listed in **Attachment A** to this document.

8.      I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21 ᵗʰ day of February, 2008

James Furman

**ATTACHMENT A**

**PURCHASES AND SALES OF SiRF TECHNOLOGY HOLDINGS, INC.
SECURITIES BY JAMES FURMAN
BETWEEN OCTOBER 30, 2007 AND FEBRUARY 4, 2008**

| Trade Date | Number of Shares | Price Per Share/Unit | Buy or Sell |
|---|---|---|---|
| January 15, 2008 | 800 | $17.82 | Bought |

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

JAMES FURMAN, Individually And On Behalf of All Others Similarly Situated

### DEFENDANTS

SiRF TECHNOLOGY HOLDINGS, INC., MICHAEL L. CANNING, DIOSDADO P. BANATAO, KANWAR CHADHA, GEOFFREY RIBAR

(b) County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Girard Gibbs LLP
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800    Fax: (415) 981-4846

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury

**PERSONAL INJURY**
- [ ] 362 Personal Injury— Med. Malpractice
- [ ] 365 Personal Injury — Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 440 Other Civil Rights

### PRISONER PETITIONS
- [ ] 510 Motions to Vacate Sentence
**Habeas Corpus:**
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

### FORFEITURE/PENALTY
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt.Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 463 Habeas Corpus – Alien Detainee
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 810 Selective Service
- [X] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [X] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. Sections 78j, 78t; Violation of the Securities Exchange Act of 1934

Brief description of cause:
Violation of the Federal Securities Laws.

## VII. REQUESTED IN COMPLAINT:

- [X] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE". Esses v. SiRF Technology Holdings, Inc., et al., 3:08-cv-00856-MMC (N.D. Cal.)

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE AND "X" IN ONE BOX ONLY)

- [ ] SAN FRANCISCO/OAKLAND
- [ ] SAN JOSE

DATE
February 25, 2008

SIGNATURE OF ATTORNEY OF RECORD